**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | CHAPTER 11 |
| SACKS WESTON LLC | Case No. 23-12540 (PMM) |
| Debtor | |

**CHAPTER 11 PLAN OF REORGANIZATION**

**Proposed by Sacks Weston LLC**

SMITH KANE HOLMAN, LLC
Nicholas M. Engel, Esquire
David B. Smith, Esquire
112 Moores Road, Suite 300
Malvern, PA 19355
(610) 407-7215 Phone
nengel@skhlaw.com
*Counsel to Debtor-In-Possession*

Date: February 21, 2024

Sacks Weston LLC (the "Debtor") proposes the following Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Code").

## Article I
## Definitions

For the purposes of this Plan, each of the terms listed below shall have the meaning given to it in this Article (such meanings to be equally applicable to the singular and plural forms of the terms defined except as the context otherwise requires).  Any term defined in the Code and not otherwise defined herein shall have the meaning specified in the Code unless the context otherwise clearly requires.

"Administrative Claim": a claim under Sections 503(b)(1), (2), (6) or (9) of the Code that is entitled to priority under Section 507(a)(2) of the Code.

"Allowed Claim": (a) a Claim that has been allowed by a Final Order; or (b) a Claim timely filed with the Office of the Clerk of the Court or scheduled by the Debtor in its Schedules as neither unliquidated, disputed, nor contingent, and as to which Claim (i) no objection with respect to the allowance thereof has been or shall be interposed within the period of the time fixed by the Code, the Bankruptcy Rules or orders of the Court, or (ii) as to which claim either an objection to the Claim or an application has been resolved by a Final Order to the extent such objection or application is determined in favor of the holder of such Claim.  Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such Claim or any other charge relating to the Claim accruing from or after the Petition Date, except to the extent authorized in accordance with Section 506 of the Bankruptcy Code.

"Allowed Secured Claim": an Allowed Claim that is a Secured Claim.

"Assets": all of the Debtor's right, title and interest in, to and under any and all property, real and personal, tangible and intangible, leases, rents payable and all amounts due under its leases, goods, chattel paper, documents, instruments, money, fixtures, furniture, accounts, causes of actions, claims and rights of any kind, payments, wherever situated, together with the proceeds thereof.

"Bankruptcy Code" or "Code": Title 11 of the United States Code, as amended from time to time, applicable to this case as of the Petition Date.

"Bankruptcy Court" or "Court": the United States Bankruptcy Court for the Eastern District of Pennsylvania.

"Bankruptcy Rules": the Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States, as amended from time to time, including the Local Rules adopted by the Bankruptcy Court.

1

"Bar Date": the last date fixed by the October 16, 2023 Order of the Bankruptcy Court for the filing of proofs of claim in the Debtor's bankruptcy case (*Dkt. No. 67*).

"Business Day": any day except a Saturday, Sunday, or other day on which commercial banks located in Pennsylvania are authorized by law to close.

"Case": the bankruptcy case as above captioned.

"Causes of Action": all claims and causes of action now owned or hereafter acquired by the Debtor, whether arising under the Code or other federal or state law, including, without limitation, any causes of action arising under Sections 544, 547, 548, 550, 551, 553 or other sections of the Code.

"Claim": the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, liquidated, legal, equitable, secured or unsecured, and as such term is defined in Section 101(5) of the Code, against the Debtor and/or, pursuant to Section 102(2) of the Code, any of the Debtor's Assets.

"Claimant": the holder of a Claim.

"Class": a group of Claims, consisting of Claims which are substantially similar to each other, as classified pursuant to this Plan and Sections 1122 and 1123 of the Code.

"Collateral": any property or interest in property of the estate of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

"Confirmation Date": the date on which the Court enters on the Court's docket, the Confirmation Order confirming the Plan at or after a hearing convened pursuant to Section 1129 of the Code.

"Confirmation Order": the Order of the Court confirming the Plan pursuant to Section 1129 of the Code.

"Contested Claim": any Claim as to which the Debtor or any other party in interest has interposed a timely objection, in accordance with the Code and Bankruptcy Rules, which objection has not been determined by a Final Order.

"Creditor": the holder of a Claim against the Debtor.

"Cure Amount":  Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, necessary in connection with the assumption of an executory contract or unexpired lease, pursuant to section 365(b) of the Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties to such executory contract or unexpired lease, to the extent such obligations are enforceable under the Code and applicable non-bankruptcy law.

"Deficiency Claim": with reference to a Creditor having an Allowed Secured Claim, that portion of the Creditor's Allowed Claim that is not an Allowed Secured Claim only because (a) the monetary benefit derived from the exercise of any available right of setoff and the application to the Claim of the net proceeds available from disposition of Assets securing the Creditor's Allowed Claim is insufficient to permit payment in full of the Allowed Claim, or (b) a Final Order entered in a proceeding to determine the extent of the Secured Claim provides that part of the Creditor's Allowed Claim is not an Allowed Secured Claim based on a valuation of the Creditor's interest in the Debtor's interest in the Assets securing the Claim.

"Disputed Claim Amount": means the amount set forth in the Proof of Claim relating to a Disputed Claim or, if an amount is estimated in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, the amount so estimated pursuant to an order of the Bankruptcy Court.

"Disputed Claim": any Claim which is scheduled as disputed, contingent or unliquidated, or which is objected to in whole or in part in accordance with the Plan.

"Distribution": any payment by the Debtor to a Creditor on account of a Claim.

"Effective Date": the first Business Day which is at least fifteen (15) days after the Confirmation Date.

"Final Unsecured Creditor Distribution Date": the later of the Initial Unsecured Creditor Distribution Date or the date, which is the third anniversary of the Effective Date.

"Final Order": (a) a judgment, order or other decree issued and entered by the Bankruptcy Court, which judgment, order or other decree (i) has not been reversed or stayed and as to which the time to appeal has expired and as to which no appeal or petition for review, rehearing or certiorari is pending or (ii) with respect to which any appeal has been finally decided and no further appeal or petition for certiorari can be taken or granted; and (b) a stipulation or other agreement entered into which has the effect of any such judgment, order or other decree described in clause (a) above.

"Guaranteed Unsecured Creditor Payment": the sum of $75,000.00 paid by the holder of the Interest as additional "New Value" under the Plan, which amount will be paid into the Unsecured Creditor Escrow Account in installments of $25,000.00 on the first, second, and third anniversaries after the Effective Date.

"Impaired Claimant": a Claimant holding a claim in an Impaired Class.

"Impaired Class": any Class of Claims or Interests which is "impaired" pursuant to Section 1124 of the Code.

"Initial Unsecured Creditor Distribution Date": shall be the first Business Day of the month following the date when both (1) the Class 1 Claim, as to both amount and the extent of

the Liens securing such amount, is determined by a Final Order and (2) all of the Virage Collateral, if any, has been fully liquidated and collected by the Reorganized Debtor.

"Insider": the term "insider" as defined in Section 101(31) of the Code.

"Interest": any rights of holders of issued and outstanding membership interests of the Debtor.

"Lien": with respect to any of Debtor's Assets, any mortgage, lien, pledge, charge, security interest, lease or other security device or encumbrance of any kind affecting such Assets that has been properly perfected under applicable law.

"Net Income": for the period subsequent to the Petition Date through the third anniversary of the Effective Date, the Reorganized Debtor's receipts on account of its Post-Petition Cases less all expenses incurred in connection with operating the business of the Reorganized Debtor, business expenses, and expenses incurred in connection with the implementation of this Plan.

"New Value Contribution": the cash contributed by either or both of the shareholders of the Debtor's sole member, which is a corporation, in an amount necessary (i) to pay in full all Administrative Claims in the Case, including the professional fees of Debtor's counsel pursuant to terms mutually agreeable to the contributors and Debtor's counsel; (ii) to fund any shortfalls in the Reorganized Debtor's operations; and (iii) the Guaranteed Unsecured Creditor Payment. The New Value Contribution also includes the funds contributed to the Debtor during the pendency of this Case. The New Value Contribution shall be utilized as the requisite "new value" if the Debtor seeks confirmation of the Plan under 11 U.S.C. § 1129(b).

"Person": as defined under Section 101(41) of the Bankruptcy Code.

"Petition": the Petition under Chapter 11 of the Code, filed by the Debtor with the Bankruptcy Court pursuant to which the Case was commenced.

"Petition Date": August 25, 2023, the date upon which the Debtor filed its Petition.

"Plan": this Plan of Reorganization, as it may be further amended, modified or supplemented from time to time, and any exhibits and schedules thereto.

"Post-Petition Cases": all the Debtor's cases and claims acquired or originated after the Petition Date, including the Proceeds thereof.

"Priority Non-Tax Claim": a Claim or a portion of a Claim for which priority is asserted under Section 507 of the Code, other than Section 507(a)(8).

"Priority Tax Claim": a Claim or a portion of a Claim for which priority is asserted under Section 507(a)(8) of the Code.

"Proceeds": as defined in Section 9-102 of the Uniform Commercial Code as applicable to this Case.

"Proof of Claim": the document filed in this proceeding by a Claimant with the Clerk of the Bankruptcy Court in a form acceptable to the Clerk, stating its Claim, the amount, the type, the consideration and/or basis thereto and any attachments thereto.

"Pro Rata": with respect to any distribution to the holder of an Allowed Claim of a particular Class on a particular date, the same proportion that the amount of such Allowed Claim bears to the aggregate amount of all Claims of such Class, including Contested Claims.

"Rejection Claim": any Claim based upon the Debtor's rejection of any executory contract or unexpired lease pursuant to Sections 365 and/or 1123(b)(2) of the Code, either prior to or on the Confirmation Date to the extent of the amount of such Claim which is an Allowed Claim.

"Reorganized Debtor": the Debtor, as reorganized and existing on the Effective Date.

"Schedules": the schedules of assets and liabilities heretofore filed by or on behalf of the Debtor with the Office of the Clerk of the Court pursuant to the Bankruptcy Rule 1007, as amended from time to time.

"Secured Claim": a Claim that is secured by a valid, perfected, and enforceable and unavoidable Lien on any or all of the Debtor's Assets; any deficiency in the value of the interest of the holder of the Secured Claim in such property shall be treated as an Unsecured Claim.

"Secured Creditor Escrow Account": an escrow account established by the Reorganized Debtor into which Virage Collateral Case Proceeds shall be deposited until there is a final determination regarding whether Virage has an Allowed Secured Claim on any such Virage Collateral Case Proceeds.

"Unimpaired Claimant": a Claimant holding a claim in an Unimpaired Class.

"Unimpaired Class": any Class of Claims under the Plan which is not "impaired" within the meaning of Section 1124 of the Code.

"Unsecured Claim": a Claim, to the extent of the amount of such Claim which is an Allowed Claim, including a Rejection Claim, a Deficiency Claim or default of any Debtor under a contract entered into by the Debtor prior to the Petition Date, other than a Secured Claim, Administrative Claim, Priority Tax Claim, or Other Priority Claim.

"Unsecured Creditor Escrow Account": an escrow account established by the Reorganized Debtor into which all funds available for distribution to Unsecured Creditors shall be deposited.

"Virage": shall mean Virage SPV I LLC.

5

"Virage Collateral": shall mean the Virage Collateral Cases and the Virage Collateral Case Proceeds.

"Virage Collateral Cases": the Debtor's cases or claims in which the Debtor has been retained as legal counsel or otherwise has a legal interest as of the Petition Date and in which Virage asserts a Lien.

"Virage Collateral Case Proceeds": shall mean "Case Proceeds" (as that term is defined in that certain Loan Agreement dated June 5, 2017 by and between Virage and the Debtor) of the Virage Collateral Cases.

"Virage Pending Litigation": the matter styled Virage SPV I, LLC v. Sacks Weston, LLC et al., in the District Court of Harris County, Texas, 152nd Judicial District Court, Cause of Action No. 2023-19385, which matter was removed and is presently pending in the United States District Court for the Southern District of Texas at Case No. 4:23-CV-03292.

Any term defined in the Code and not otherwise defined herein shall have the meaning specified in the Code unless the context otherwise clearly requires.

## ARTICLE II
## Treatment of Administrative Expenses and Priority Tax Claims

2.1     Treatment of Administrative Claims.  Allowed Administrative Claims incurred and/or arising after the Petition Date entitled to priority in accordance with Section 507(a)(2) of the Code, shall be paid by the Debtor, except to the extent that any Claimant agrees to different treatment, (i) in cash on the Effective Date, or (ii) in accordance with the credit terms extended by the creditor of such obligations, or (iii) as required by law, or (iv) in the case of professionals employed at the expense of the estate upon the entry of a Final Order allowing such Claim or as otherwise permitted under the Plan or under the Bankruptcy Rules.

2.2     Treatment of Priority Tax Claims.  Allowed Priority Tax Claims, if any, shall be paid by the Debtor, in cash, in an amount equal to such Allowed Priority Tax Claim, at the option of the Debtor (a) on the Effective Date or (b) in equal quarterly installments commencing on the first Business Day of the month following the Effective Date and continuing thereafter, with interest at a rate of 4% per annum, through July 2028, or as otherwise agreed by the Taxing Authority, pursuant to Section 1129(a)(9)(C).

2.3     Voting.  As provided in section 1123(a)(1) of the Code, Administrative Claims and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan.  Rather, all such Claims shall be treated separately as unclassified Claims pursuant to the terms set forth in this Section.

2.4     Professional Compensation and Reimbursement Claims.  All parties seeking an award by the Bankruptcy Court of compensation for services rendered and/or reimbursement of

expenses incurred through and including the Effective Date under sections 330 or 331 of the Code shall (a) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date which is 60 days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court and (b) if granted such an award by the Bankruptcy Court, be paid in full in cash in such amounts as are Allowed by the Bankruptcy Court, on the later of the Effective Date and the date upon which such Administrative Claim becomes an Allowed Administrative Claim, or upon such other terms as may be mutually agreed upon between such holder of an Administrative Claim and the Reorganized Debtor.

## ARTICLE III
### Classification of Claims

For purposes of this Plan, Claims are divided into the Classes set forth in this Article. This classification of Claims is made for purposes of voting on the Plan and making distributions hereunder and for ease of administration hereof. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that it has not been paid, released or otherwise satisfied prior to the Effective Date.

| Class | Status |
|---|---|
| Class 1 – Virage SPV 1 LLC (secured) | Impaired |
| Class 2 – Commonwealth of Pennsylvania (secured) | Impaired |
| Class 3 – Virage Deficiency Claim | Impaired |
| Class 4 – General Unsecured Claims | Impaired |
| Class 5 – Unsecured Claim of Sacks & Weston (a professional corporation and the Debtor's sole member) | Impaired |
| Class 6 – Interests | Impaired |

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for the purposes of determining acceptance or rejection of the Plan by such Class pursuant to Section 1129(a)(7) of the Bankruptcy Code.

## ARTICLE IV
### Treatment of Classes of Claim

4.1    **Class 1. (<u>Virage SPV 1 LLC Secured Claim</u>).**

(a)    **<u>Impairment and Voting</u>.**  Class 1 consists of the Secured Claim of Virage, if any, by virtue of its asserted security interest in the Virage Collateral.  Virage's Secured Claim is Impaired and, thus, Virage is entitled to vote to accept or reject the Plan on account of its Class 1 Secured Claim.

(b)    **<u>Secured Claim Treatment</u>**.  To the extent that Virage is determined to have an Allowed Secured Claim, Virage shall receive all Virage Collateral Case Proceeds arising from any Virage Collateral Case on which Virage is determined to have a Lien.

Virage shall have a Class 3 Claim as follows: (1) to the extent there are remaining sums due owing to Virage on account of its Allowed Claim after all of the Virage Collateral Cases have concluded and after all of the Virage Collateral Case Proceeds have been paid to Virage or (2) the Court has entered a Final Order determining the amount of Virage's Deficiency Claim, whichever occurs earlier.

Virage shall retain its Lien, if any, on the Virage Collateral to the same extent, priority and validity it is determined to have held as of the Petition Date and shall be deemed to be paid in full on account of its Class 1 Claim upon receipt of all Virage Collateral Case Proceeds to the extent that Virage has a Lien on same.

4.2    **Class 2. (<u>Commonwealth of Pennsylvania Secured Claim</u>).**

(a)    **<u>Impairment and Voting</u>.**  Class 2 consists of the Secured Claim of the Commonwealth of Pennsylvania (the "Commonwealth"), if any, by virtue of its security interest in the Debtor's property.  The Commonwealth's Secured Claim is Impaired and, thus, the Commonwealth is entitled to vote to accept or reject the Plan on account of its Class 2 Secured Claim.

(b)    **<u>Treatment</u>**.  The Reorganized Debtor shall pay the Commonwealth on account of its Allowed Secured Claim in six equal monthly installments commencing on the first Business Day of the month following the Effective Date and continuing for the ensuing five months thereafter.

The Commonwealth shall retain its liens on the Debtor's property to the same extent, priority and validity as it held as of the Petition Date until it is paid pursuant to the terms of this Plan.

4.3    **Class 3. (<u>Virage Deficiency Claim</u>).**

(a)    **<u>Impairment and Voting</u>.**  Class 3 consists of the Deficiency Claim, if any, of Virage.  Class 3 is Impaired and, thus, Virage is entitled to vote to accept or reject the Plan on account of its Class 3 Claim.

8

(b) **Treatment**. The Class 3 Allowed Claim shall be paid, Pro Rata with all Class 4 Creditors, from all funds in the Unsecured Creditor Escrow Fund on the Initial Unsecured Creditor Distribution Date and then again on the Final Unsecured Creditor Distribution Date. Notwithstanding the foregoing, within 15 calendar days of each of the first, second and third anniversaries after the Effective Date, if the Class 3 Creditor has an Allowed Unsecured Claim as of those dates, it shall be entitled to a Pro Rata distribution of the Guaranteed Unsecured Creditor Payment that exists as of that time. If the Class 3 Creditor does not have an Allowed Claim as of the date of any such annual distribution, it shall not be entitled to a distribution from the Guaranteed Unsecured Creditor Payment.

The treatment and consideration to be received by the holder of the Class 3 Claim shall be in full settlement, satisfaction, release and discharge of its Unsecured Claim.

4.4   **Class 4. (General Unsecured Claims)**.

(a) **Impairment and Voting.** Class 4 consists of General Unsecured Claims except those set forth in Class 3 and in Class 5. Class 4 is Impaired and, thus, Class 4 Claimants are entitled to vote to accept or reject the Plan.

(b) **Treatment**. Class 4 Allowed Claims shall be paid, Pro Rata with the Class 3 Creditor, from all funds in the Unsecured Creditor Escrow Fund on the Initial Unsecured Creditor Distribution Date and then again on the Final Unsecured Creditor Distribution Date. Notwithstanding the foregoing, within 15 calendar days of each of the first, second and third anniversaries after the Effective Date, all Class 4 Creditors with an Allowed Unsecured Claim as of those dates shall be entitled to a Pro Rata distribution of the Guaranteed Unsecured Creditor Payment that exists as of that time. Any Class 4 Creditor that does not have an Allowed Claim as of the date of any such annual distribution shall not be entitled to a distribution from the Guaranteed Unsecured Creditor Payment.

The treatment and consideration to be received by holders of Class 4 Claims shall be in full settlement, satisfaction, release and discharge of their respective Claims.

4.5   **Class 5. (Unsecured Claim of Sacks & Weston)**.

(a) **Impairment and Voting.** Class 5 consists of the Unsecured Claim of Sacks & Weston, a professional corporation, which is the holder of the Interest in the Debtor. Class 5 is Impaired and, thus, the Class 5 Claimant is entitled to vote to accept or reject the Plan.

(b) **Treatment**. The Class 5 Creditor shall be paid from any funds remaining in the Unsecured Creditor Escrow if and only if Class 3 and Class 4 have been paid in full.

The treatment and consideration to be received by the holder of the Class 5 Claim shall be in full settlement, satisfaction, release and discharge of its Claim.

    4.6    **Class 6. (Interests)**.

    (a)    **Impairment and Voting.** Class 6 consists of all Interests in the Debtor. As of the Plan filing, the Debtor has one holder of an Interest constituting 100% of the membership interest in the Debtor as follows: Sacks & Weston, a Pennsylvania professional corporation. Class 6 is impaired and consequently the holder of the Class 6 Interests is entitled to vote on the Plan.

    (b)    **Treatment**. On the Effective Date, all Interests in the Debtor shall transfer and become Interests in the Reorganized Debtor for the purpose of fulfilling the obligations of the Reorganized Debtor under the Plan; the holder of Interests shall not receive any distributions on account of such Interests, unless and until all Creditors are paid in full in accordance with the Plan.

## ARTICLE V
## Execution and Implementation of the Plan

    5.1    Means of Execution/Funding. The funds necessary for the implementation of the Plan shall be as follows:

    a.    Funds collected on account of the Virage Case Collateral Proceeds shall initially be deposited by the Reorganized Debtor into the Secured Creditor Escrow Account until the Virage Secured Claim has been determined by a Final Order. To the extent that Virage is found to have an Allowed Secured Claim, the funds in the Secured Creditor Escrow Account, to the extent derived from the Virage Collateral, shall be paid to Virage. Any funds in the Secured Creditor Escrow Account not attributable to the Virage Collateral shall be transferred to the Unsecured Creditor Escrow Account and distributed according to subsection (b) below. Any funds collected on account of Virage Case Collateral Proceeds by the Reorganized Debtor after the Virage Secured Claim has been determined to be an Allowed Secured Claim shall be distributed to Virage or to the Unsecured Creditor Escrow Account consistent with this subsection (a).

    b.    The Unsecured Creditor Escrow Account shall be funded as follows: (i) from the Secured Creditor Escrow Account, to the extent that any of the funds therein are determined to not be part of the Virage Collateral; and (ii) from the Net Income. Class 3 Allowed Claims and Class 4 Allowed Claims shall be paid, Pro Rata, from all funds in the Unsecured Creditor Escrow Fund on the Initial Unsecured Creditor Distribution Date and then again on the Final Unsecured Creditor Distribution Date.

    c.    With respect to the application of the Reorganized Debtor's Net Income pursuant to this Plan, the Reorganized Debtor shall deposit receipts on account of its Post-Petition Cases into its general operating account from which it is permitted to pay its ordinary and necessary costs of operation, including costs associated with its Post-Petition Cases. No later than the 15th day of the month following each rolling three-month period after the Effective Date through the third anniversary thereof, the Reorganized Debtor shall file with the

10

Bankruptcy Court an accounting of the Net Income calculation (the "Post-Confirmation Quarterly Accounting") and transfer to the Unsecured Creditor Escrow Account the Net Income for that quarterly period consistent with the accounting filed with the Bankruptcy Court.

      d.    With respect to the New Value Contribution, the Reorganized Debtor shall include in the Post-Confirmation Quarterly Accounting the amount of contributions made by the holder of the Interest to the Reorganized Debtor to pay for Administrative Claims and cash shortfalls in operations.

      e.    The scheduled Unsecured Claim in the amount of $688,321.41 of the Interest Holder has been subordinated to the claims of all other Unsecured Creditors and, accordingly, shall not be paid unless and until all other Unsecured Creditors (i.e., those in Class 3 and Class 4) have been paid in full.

    5.2    <u>Good Faith</u>.  This Plan is proposed by the Debtor in good faith in the belief that more will be realized by the Claimants than would be the case if the Assets of the Debtor were liquidated under Chapter 7 of the Code.

    5.3    <u>Escrow Accounts</u>.  The Debtor intends to open and establish the Secured Creditor Escrow Account and the Unsecured Creditor Escrow Account for the purpose of funding their obligations pursuant to this Plan and making Distributions consistent with the Plan.

      a.    <u>Distributions from Escrow Accounts</u>.  Distributions to holders of Allowed Claims will be made as follows: (i) at the address set forth on the respective Proofs of Claim filed by holders of such Claims, (ii) at the address set forth in any written notice of address change delivered to the Debtor or Debtor's counsel after the date of filing of any Proof of Claim or (iii) at the address reflected in the Debtor's Schedules, if no Proof of Claim has been filed and the Debtor or its counsel have not received a written notice of change of address. Distributions must be cashed within three (3) months of the date of distribution.

      b.    <u>Undeliverable and Unclaimed Distributions</u>.  If any Allowed Claimant's distribution is returned to the Debtor as undeliverable, the Debtor will take reasonable steps to attempt to deliver the distribution to the holder of the Allowed Claim.  Any distributions which are undeliverable and unclaimed or have not been cashed within the time periods set forth above shall be aggregated and redistributed by the Debtor to the holders of Allowed Claims.

    5.4    <u>Causes of Action</u>.  The Debtor shall have the exclusive right, but shall be under no obligation, to pursue Causes of Action allowed under applicable law or under the Bankruptcy Code.  The Debtor shall prosecute all Causes of Action diligently so as to conclude such actions as soon as practicable.  As of the Plan filing date, the only Causes of Action of which the Debtor is aware are those asserted in the Virage Pending Litigation.

    5.6    <u>Post-Effective Date Fees and Expenses</u>.  From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons

11

thereafter incurred, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

## ARTICLE VI
## Executory Contracts and Unexpired Leases

6.1     Pursuant to Section 365 of the Code, the Debtor has the right to reject executory contracts or leases in the Debtor's reasonable business judgment. All executory contracts are rejected pursuant to Sections 365 and 1123(b)(2) of the Code upon the Confirmation Date, unless specifically assumed pursuant to the Plan or by separate motion. Any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease will constitute a Class 4 Claim.

6.2     Claims arising out of the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served upon the Debtor or, on and after the Effective Date, the Reorganized Debtor, by no later than 30 days after the later of (i) notice of the entry of an order approving the rejection of such executory contract or unexpired lease (including, if applicable, the Confirmation Order), and (ii) such other date as may be fixed by order of the Bankruptcy Court. All such Claims not filed within such time will be forever barred from assertion against the Debtor and their estates and the Reorganized Debtor and their property. Nothing herein shall be deemed to extend the deadline to file a proof of claim with respect to any executory contract or unexpired lease previously rejected by the Debtor. Any Rejection Claim for damages arising by reason of the rejection of any executory contract or unexpired lease will constitute a Class 4 Claim.

## ARTICLE VII
## Objections to Claims

7.1     Within ninety (90) days after the Effective Date, objections to Claims may be filed with the Court by the Debtor. Any such objection shall be served upon the United States Trustee and the Claimant holding the Claim to which objection is made. Notwithstanding the foregoing, any objection to Virage's existing proof of claim, any amendment thereto or any newly filed claim(s) shall be addressed in the Virage Pending Litigation, including whichever court exercises jurisdiction of the case, unless the Debtor opts for a different mechanism to object to Virage's claim and/or its purported Liens.

## ARTICLE VIII
## Acceptance or Rejection of Plan
## Effect of Rejection of Plan by One or More Classes

8.1     **Impaired Classes to Vote**. Each Claimant who is a member of an Impaired Class under this Plan is entitled to vote, if either (i) a Claim has been scheduled by the Debtor, or (ii) the Creditor has filed a Proof of Claim on or before the Bar Date.

8.2     Acceptance of Class of Claimants. Each Class of Claimants shall have voted to accept the Plan if the Plan is accepted by Claimants of such Class that hold at least two-thirds of the aggregate dollar amount and more than one-half in the number of the Allowed Claims of Claimants of such Class that vote to accept or reject the Plan.

8.3     Confirmation Pursuant to Section 1129(b). If a sufficient number of holders of a particular Class of Claims do not accept the Plan, then the Debtor requests confirmation of the Plan pursuant to Section 1129(b) of the Code or as otherwise authorized under the Code.

## ARTICLE IX
## Post-Confirmation/Discharge

9.1     Title to Assets. On and after the Effective Date, all assets of the Debtor's estate shall vest in the Reorganized Debtor free and clear of any and all liens, mortgages, pledges, security interests, restrictions, prior assignments, liabilities, obligations, encumbrances, charges and claims of every kind whatsoever unless otherwise provided herein. Notwithstanding the foregoing, all valid liens, mortgages, pledges and other security interests in favor of holders of Secured Claims shall remain in full force and effect and shall not be discharged or impaired by the confirmation or implementation of the Plan and shall survive unaffected by the reorganization contemplated by the Plan.

9.2     Discharge of Liabilities. Pursuant to 11 U.S.C. Section 1141(d)(1), the Debtor shall be discharged and released of all Claims arising prior to the Effective Date, other than those Claims arising pursuant to and in accordance with the terms of the Plan.

9.3     Filing of Additional Documents. On or before the Confirmation Date, the Debtor shall file with the Court such agreements, and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

9.4     Automatic Stay. Pending the closing of the case pursuant to Section 350(a) of the Code, and/or until the Debtor receives a discharge from the Court, the stay imposed by Section 362 of the Code shall remain in effect as to the Debtor.

9.5     Final Decree. The Debtor shall move for the entry of a final decree closing the within Chapter 11 case following the Effective Date.

## ARTICLE X
## Injunction Against Interference with Plan

10.1    No Interference. Other than as provided herein, no Person may commence any action precluding the implementation and consummation of this Plan, or perform any act, which would have the effect of interfering with the implementation and consummation of this Plan and the payments to be made hereunder.

## ARTICLE XI
## Modification of the Plan

11.1. <u>Pre-Confirmation Modification</u>. At any time before the Confirmation Date, the Debtor may modify the Plan, but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of Sections 1122 and 1123 of the Code. In the event there is a modification of the Plan, then the Plan as modified, shall become the Plan.

11.2 <u>Pre-Consummation Modification</u>. At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified, but it may not be modified so that the Plan, as modified, fails to meet the requirements or Sections 1122 and 1123 of the Code. The Plan as modified under this Section, becomes the Plan only if the Court, after notice and a hearing, confirms such Plan, as modified, under Section 1129 of the Code.

11.3 <u>Non-Material Modification</u>. After the Confirmation Date, the Debtor may, with the approval of the Court, and so long as it does not materially or adversely effect the interest of Claimants, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry of the purposes, intent and effect of this Plan.

## ARTICLE XII
## Retention of Jurisdiction

12.1 The Court shall retain jurisdiction of this Case after the Confirmation Date for the following purposes:

a. To take any action with respect to the subordination, allowance, disallowance, validity, perfection, enforcement or avoidance of Claims and Liens, including, determination of objections to the allowance of claims and amendments to schedules;

b. To classify the Claim of any Claimant and to re-examine Claims which have been allowed for purposes of voting, and to determine such objections as may be filed to Claim;

c. To determine any and all disputes arising under or the Plan;

d. To determine any and all applications for allowance of compensation and reimbursement of expenses herein;

e. To determine any applications for rejection of executory contracts and unexpired leases and to determine the amount of any Claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

14

    f. To determine any and all applications, adversary proceedings and contested and litigated matters pending in the Case as of the Confirmation Date or filed within 180 days thereafter;

    g. To hear, determine and enforce any Code-created Causes of Action and to authorize prosecution of same in such other courts as may be required by law;

    h. To modify any provision of the Plan to the full extent permitted by the Code;

    i. To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent, and effect of the Plan;

    j. To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under provision of the Code or otherwise deemed appropriate to accomplish the Plan's intent and purpose;

    k. To grant extensions of any deadline set herein;

    l. To enforce all discharge provisions under the Plan;

    m. To enter any order, including injunctions, necessary to enforce the terms of the Plan, and the rights and power of the Debtor under the Code, this Plan and as the Court may deem necessary; and

    n. To enter a Final Order closing this Case.

## ARTICLE XIII
### Miscellaneous

  13.1 *Choice of Law.*  Except to the extent superseded by the Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the choice of law rules thereof.

  13.2 *Payment of Such Statutory Fees.*  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date and timely thereafter until the Case is closed.

  13.3 *Headings.*  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the terms in this Plan.

15

**13.4** <u>Successors and Assigns</u>.  The rights duties and obligations of any Person named or referred to in this Plan shall be binding upon and shall inure to the benefit of the successors and assigns of such Person.

                                                Respectfully Submitted,

                                                SACKS WESTON LLC

Date: February 21, 2024                      By: /s/ *Andrew B. Sacks*
                                                Andrew B. Sacks, Manager

                                                SMITH KANE HOLMAN, LLC

Date:  February 21, 2024                     By: /s/ *Nicholas M. Engel*
                                                Nicholas M. Engel, Esquire
                                                David B. Smith, Esquire
                                                112 Moores Road
                                                Suite 300
                                                Malvern, PA 19355
                                                (610) 407-7216 Phone
                                                (610) 407-7218 Fax
                                                *Attorneys for Debtor-in-Possession*